Before you are Judge Jordan and myself and before you on video is Judge Wise who's participating from Pittsburgh because you can tell the world the Third Circuit uses all the new techniques as appropriate. Good afternoon Joe, how are you? Good afternoon, glad to see you and hear you all. Nice to see and hear you. Can you all see Judge Wise? He can see you. Those of you who haven't done this before I can tell you so you better be good like Santa Claus he's watching. Okay we'll hear from Ms. Schneider to begin with. Thank you Your Honor. May it please the court I'm Dena Schneider representing the Appellant's Pediatric Screening. With me are Jeff Brooks from the Mental Law Group and my associate Joe Ansley. Welcome. I would like to reserve three minutes for rebuttal. That's granted. Thank you. This case arises from a contract dispute. I do not. Two contracts. Two contracts. Well there's a dispute as to whether it's one or two but from a con at least one and I don't say that to give factual background but because that is why we believe this court should reverse the tort recovery that was rendered for fraudulent misrepresentation and the punitive damages award that went with it. Can you explain why since you your client had raised the the gist of the action doctrine at the motion to as you point out the court had sua sponte raised it in a pretrial conference why it is that no objection was made to instructing the jury on the tort claim? Excuse me Joe can you hear him? Yes I can. Okay go ahead I'm sorry. This is a question of law and it's pediatrics position that we'd had no obligation to We could have made that objection but it didn't seem necessary. If it's a question of law then help me understand why in your briefing you repeatedly refer to the state of the evidence and we could go through and look at several pages in the blue brief with Judge Slover's indulgence. I'll just page 9 of the blue brief says most of the testimony concerned telechem's alleged trade secrets and their supposed misappropriation the balance of the testimony dealt with pediatrics alleged breach of contract which certainly sounds like a reference to the state of the evidence not to an issue of law. On pages 33 through 35 you have a series of bullet points that talk about in some detail testimony from Rina Sheena. I don't know if I'm pronouncing this lady's name correctly. Dr. Mark Sheena from Mr. Haji. That's like I said that's about two pages of bullet points on page 25 and again there's more than this but I'm just kind of giving you a representative sample here where you talk about the claim being based on the same facts as the breach of contract claim and no evidence of separate harm or damages was presented at trial. When I read those things I was led to wonder if this is a question of law why do they repeatedly talk about the evidence? The evidence here is completely undisputed and it's the same evidence that was present really in the to the extent it's been clear what the alleged misrepresentation was here and how that was related to the contracts because it was claiming that there was that telechem was entitled to get the commercial benefit of the research. That was in the contracts. We argued before I think it was Judge Schwab that that was we considered it law of the case we didn't take it back up. All of the evidence that was presented at trial is merely confirmatory of that same position. There's nothing that contradicts it and so it's the same legal question. But by saying all the evidence confirms it Ms. Schneider as the briefing does too isn't that a just a way of saying had they come up with other evidence we'd have a different question. In other words aren't you commenting on the evidence by saying all the evidence was the same? No I think what we're trying to say is this was the claim. The evidence was merely supportive of the claim but the claim was that the misrepresentation which allegedly entitled telechem to a tort recovery was in the contract. That was the claim. There's no evidence they could present one way or the other that could change that claim unless they changed the claim which they didn't. It's the same claim. So if they had come forward with evidence that talked about a variety of misrepresentations the counterfactual from your perspective but hypothetically speaking if they'd said well we met with Mr. Naylor and he said we're gonna promise you $10,000 a month for the first 12 months and then it'll triple after that for the next 12 months and none of those things happened that wouldn't be evidence of fraud in the inducements? Our position would still be that wasn't evidence of fraud in the inducement because that would still relate to the contract. It would be promises of contractual performance which are not recoverable in tort if they're in the contract. But I think if those allegations had been made there would be a stronger argument that perhaps we should object at that point to that issue going to the jury because that would have been a little bit different from the claim the telecam had originally asserted. But in this case as the evidence developed the claim did not change. I'll ask questions. In your view your your assertion seems to be that telecam can't distinguish between the recovery on its fraud counterclaim and the contract counterclaim because their assertion that the first the fraud counterclaim relates to the oral contract is bogus. If I understood your briefing correct. I don't think that's exactly what I would say. Okay. The oral contract also refers to a promise that telecam will obtain commercial benefit from the research. It's the same promise and telecam also says in its counter claim which is a binding judicial omission that the oral contract was incorporated memorialized in the written contract which also specifically says the telecam will receive some of the commercial benefit of the contract. And your position has been that there are two contracts. Yes. That is correct and the jury found that there were two contracts. One is to help out and with the grant application and the other is the development the commercial development. Correct. Yes. One is to collaborate on the research the other one is to work towards commercializing the results of that research. Now is there but you were hurt I guess is it it's your plan you were hurt because they didn't proceed with the multi-patient microarray. Is that basically what was done that was wrong from yours? But what was what are you what are you complaining about? Well we're complaining about the recovery that was awarded to telecam which is the defendant here but had a counter claim. So telecams recovery for fraudulent misrepresentation on the alleged theory that pediatrics misrepresented that telecam would obtain commercial benefit from the research when that didn't happen and when allegedly tell pediatrics never intended to help that happen. Because that contract because that promise that misrepresentation is part of the contract the remedy is in contract and not in tort. If you want to have a fraudulent misrepresentation claim you must have an independent representation or promise on which you are proceeding and in that case that is not the case here. May I interrupt a moment? If your claim is that this was a strictly contract action and what relief are you entitled to? We would be entitled to reversal of the fraud recovery both on the grounds that it was improper and also because it was duplicative. What does rule 59 entitle you to relief? You can get redress for errors of law. The error of law here was to... What redress can you get? Can you get anything other than a new trial under rule 59? I believe so. You can get dismissal or reversal of claims. There are cases where this court has, and I believe we cited one of them, where... I'm not talking about rule 50. I'm talking strictly about rule 59, which is the only motion you have pending. Well, we also appealed from the verdict. We appealed from the verdict as being duplicative and that's an error of law we can recover irregardless. Under what rule? Because it's an error of law, Your Honor. There's a duplicative recovery. The law does not permit duplicative recoveries. One for fraud and one for contract for the same harm. And that's why you file a rule, a motion under rule 50, is it not? Rule 50 is for sufficiency of the evidence. This was not an issue of sufficiency of the evidence. This was an issue of law. Rule 59 permits you to recover for errors of law and to redress those errors. And in this case, it was a special verdict, which the jury issued and the court entered the judgment in accord with that. But our position is that the court did not enter the proper judgment in accord with that. That he should not, she should not have awarded judgment on the fraud count. I understand your position. Proceed. Turning to punitive damages, should this court think that the fraud recovery is proper, which we submit it's not, it seems pretty clear under the evolving jurisprudence of the Supreme Court, this court, and other courts around the country, that a multiple of seven to one in a case like this is really excessive. There is, if you look at the reprehensibility factors, there are only two that are even arguably present here. There's no physical harm, which is a very important, perhaps the most important factor. There is no repetitive conduct. Even the district court found that to be the case. And the district court, by the way, said that the reprehensibility here was moderate, which does not suggest a multiple near the end of even the old scale of one, single digits. But under the new approach... Suppose that the court decides that this is a contract action and no tort actions are recoverable. What happens to the punitive damage claim? It goes away, Your Honor. There are no punitive damages then. The punitive damages were awarded only on fraud. Okay. That's Pennsylvania law? Well, that's what the jury awarded. They only sought punitive damages. Is that Pennsylvania law that you cannot recover punitive damages in contract actions? I believe it is, Your Honor. But in any event, Telechem did not seek punitive damages in this case, except for its tort claims. And if the tort claim goes away, so does the punitive damages. Can you distinguish between the economic loss and the gist of the action arguments? There are really two sides of the same coin. Certain, sometimes the economic loss doctrine is applied in cases involving products liability, and gist of the action is more ordinarily applied in a commercial contract case. But they both basically say the same thing. In the economic loss, the test is whether your entitlement flows from a contract. And under the gist of the action, it's a question of where the obligations arise, which sounds pretty much to me like whether the entitlement flows from the contract or not. There are different formulations in different courts, but they are essentially the same. We're not claiming that the test varies. So you want us to reverse on the ground that Telechem should not have recovered on fraud? Correct, Your Honor. Joe, do you have anything else? Yes, come up. May it please the Court, my name is Kim Watterson, excuse me here, and I represent the Appali Telechem International, and I have here with me my colleagues, Barry Coyne and Kevin Katona, who ably tried the case. I'd like to begin with waiver and to follow up on a point that Judge Jordan made, observing that pediatrics brief is replete with factual arguments when it's attempting to show that the fraud claim is barred by the gist of the action doctrine, which, by the way, it is not. But that's a legal issue, right, that we can take de novo? Your Honor, it is in this case a sufficiency of the evidence challenge, because whether a fraud claim is barred by the gist of the action doctrine, there's not an automatic bar that applies in all cases, whenever parties to a contract also bring a fraud claim. As this Court said, even in the case cited by pediatrics, that it is often a very fact-intensive inquiry with respect to what did the evidence show with respect to the alleged breach of the tort duty, not to make a misrepresentation, or was it about the performance of the contract? If you look at, in my brief cites, all of the pages of the post-trial argument... Just a moment. I think Judge Weiss has a question. What were the facts that distinguish this from a breach of contract and a tort action? Yes, Your Honor, and this is where the evidence comes in, and as Judge Conte concluded... What is the difference? I understand your theory. I want to know what you say shows that this was tort rather than breach of contract. Your Honor, beginning at the end of 1999 and going on to 2000, pediatrics represented to telechem. Was that fraud in the inducement or was it just plain fraud? Yes, Your Honor, it was fraud in the inducement in terms of fraud in the inducement into a long-term relationship. Fraud in the inducement with respect to which contract? Well, to enter into the relationship as a whole, which, according to telechem, turned into two contracts. According to us, there was only one. Pardon me? Let's hear Judge Weiss's question. I'm sorry, Judge. It's hard. You have said that these are now one contract because the representation was part of a continuing negotiation. In fact, is that correct? Yes, Your Honor, because what happened is... Your Honor, the first representation occurred before so-called contract one. All right. Okay. Now, were there not provisions in contract two to incorporate the representations with respect to the commercial use of the material? As the trial court found, neither contract one nor contract... Please, I'm asking a question. Answer my question. Were the provisions incorporating the representations about commercial use incorporated in the second contract? No, Your Honor, they were not. The second contract provided that your client would get one-third, or two-thirds, and pediatrics would get one-third. There was no contractual obligation on the part of pediatrics to commercialize. Rather, the long-term purpose of the parties' relationship was to ultimately commercialize, and that was the benefit that was dangled before telechem so that it would first forego the subcontract relationship, which would have entitled it to $500,000, and then to... No, no, no, you're running away here. Let's get back to the contract two. You were incorporated to carry on a business, was it not? Yes, Your Honor, in contract two they were going... All right, and wasn't that business to commercialize the products of the research? Yes, for two discrete microarray projects. So that excluded anything developed from the first contract? Your Honor, the representation, again, was that these parties were going to have a long-term, complex business relationship that would lead to all kinds of profits. Our client could have simply been a subcontractor and obtained $500,000 and given... No, no, please, you're misstating that. Your client would have been entitled to a $500,000 contract, not a net profit or a loss of $500,000. There's quite a difference. Yes, Your Honor, all we were arguing is that they would have been entitled to a $500,000 subcontract. That's the payment they would have received if they would have gone into... And they decided not to do that, apparently, on the theory that they would do better if they were part of this business arrangement. Is that not correct? The long-term business relationship that Mr. Naylor promised, and yes, this occurred before contract two. Contract one had no... First of all, it was an alleged oral contract. And there were no terms in that contract pertaining to a covenant to commercialize. Our client embarked upon this relationship, gave and gave and gave, and got nothing in return. The commercialization apparently was the multi-patient application. Is that not correct? And wasn't that what was happening? And what I wanted to know is, is there anything to show that the decision made not to proceed with the multi-patient, the commercialization of the multi-patient, I forget what it was called, array, or something like that, was not made in good faith? As Judge Conte found, there was ample evidence of record that could have led... that would have supported the jury's finding that, and I apologize, I don't have the page in front of me, that all along, pediatrics did not intend to enter into and continue a long-term relationship with telehealth. Okay, could you go back to my sentence, my question? My question had to do with the decision not to proceed with the multi-patient portion of this. I mean, this was sickle cell anemia, and they had done some work, and it was... they had moved ahead with the single patient, and then according to telecom, and according to the briefs, there was a decision made that it would not be warranted to proceed with the multi-patient. Now, are you claiming that was not a good faith decision, business or medical decision? Yes, Your Honor, and I'm claiming... Where is that in the briefs? In the factual section of our brief, we discuss, and just let me give you a, for instance, telechem did everything that it said it was going to do. Ken McKay, the lawyer for pediatrics, or NeoGen, who was supposed to incorporate, said he had incorporated, simply never filed the papers to incorporate. But that doesn't go back, I'm sorry, what I'm still trying to find out is it seems to me that at the heart of all this, is the decision made not to proceed on the multi-patient, that that would have been, might have been commercially viable, but they decided it wasn't. And I don't see anything in your brief, unless I missed it, that said that was not a valid good faith decision. Well, the record shows that pediatrics did not make a business decision, it's not that it made a business decision not to continue with multi-patient commercialization. Instead, it decided that it didn't want to be in business with the flakes from California. Now, if that's true, assume that that impolitic comment accurately reflected the decision that Mr. Naylor made, what is it in the case? Where can you point in the record that shows that that was nothing more than a decision by pediatrics that, well, this business relationship isn't working out? I mean, where's your evidence that this was a fraud in the inducement, and not a decision after working together for some time that this isn't happening, it's not coming together? Well, some illustrative examples, and I'm not going to flip through my brief, because it is in the factual section of the brief to give you the exact citations. For instance, the incorporation papers are filled out and signed by everybody. Ken McKay says he's going to file them, he simply does not file them. Sure, but what is that, see, and I don't want to suggest that this is what Judge Weiss was asking, but it harkens back to something he was asking. What can you point to in the record that ties this to an inducement? In other words, you're talking about things now that happened after the oral contract was formed, and that occurred after there was an agreement to enter the pre-incorporation contract. What takes you back to the start where you can say, here's something that shows it was bad faith from the get-go? Well, you know, if you look at the testimony of the Dr. Dombrowski, the doctor for telehealth, or, excuse me, for neogen, for pediatrics, you know, he needed Dr. Shana. He needed Dr. Shana in order to get the grants. But that's the first contract. That's what they call, if you have two contracts, that was the first one, right? Your Honor, exactly, and the inducement began at the beginning. Pediatrics needed telechem. They weren't going to get the grants without telechem. I'm not arguing with you about your theory of the case. I'm trying to get you to point us to evidence. Your briefing talks about things, or seems to talk about things, that happened after that, that happened in the course of the relationship, to show it breaking down. But your argument to the district court and here is that your fraud claim is entitled to stand because it was a fraud in the inducement. If I've understood you correctly, my question is just one, and maybe you've answered as much as you can answer. But do you have something in the record that shows here's a false statement that was made, and we can show it was made with bad faith? Other than to say, please infer it because later the contractual relationship broke down. Your Honor, two points. Now I want to come back to waiver because it connects to this point. If you're asking whether there is a smoking gun in the record, and I've seen fraud cases where they exist, where there's a document that's later uncovered that demonstrates that when person A said X on thus and such a date, there's a letter or a memo or a memorandum that indicates that that person was not telling the truth on that day. There is not that smoking gun. What it is, is what happened during the course of the party's relationship, which reflected that they must have never wanted to go into business with these people, notwithstanding that they bled them dry. Your argument is this relationship broke down in a way that you, the court, should infer as the jury did. That this was never something intended to do in the first instance. Yes, Your Honor. And this is the point of precisely why. Now we're talking about sufficiency of the evidence. And this is precisely why there was waiver. I understand your argument. Answer me this. There is an assertion by your opponents that the ultimate question here, that is whether something sounds in contract or whether it sounds in tort, is a pure question of law. Do you dispute that question? Whether something sounds in contract or sounds in tort is a classically legal question? It is a question that can be resolved as a matter of law, but often there are disputed... There are underlying factual disputes which can exist, correct? So, if the question, the ultimate question, is a question of law, why is the fact that they raised it in a motion to dismiss, it was raised again in the pretrial conference, why is that not sufficient to preserve that ultimate question of law, regardless of underlying questions of fact? A couple points, and I will answer all your questions. First of all, they have not appealed from the denial of the motion to dismiss. Secondly, they did not raise the question... Isn't a motion, isn't every pretrial ruling wrapped up in an appeal that comes up to us? It's an interlocutory appeal that becomes... It's an interlocutory order, Your Honor, that becomes appealable upon final judgment. But nonetheless, upon final judgment, one, if they want to, they could appeal it, and they didn't appeal that. Secondly, they didn't... I'm not sure I understand that. Well, I think the argument I'm hearing is you're saying they needed to file some separate notice of appeal... No, no, no, no. ...or to state in their notice of appeal that, oh, by the way, we're also appealing our denial of the motion to dismiss. No, Your Honor, and I apologize, that is not what I am saying. I'm saying that the cases that they cite that deal with appeals from denials of motions to dismiss, actually squarely brought into question in their appeal briefing, for instance, the denial of the motion to dismiss. That is, the question of whether the facts as alleged in the complaint sufficiently stated a claim or did not state a claim. Okay, so you're saying that they didn't sufficiently argue in their briefing to us that as a matter of law, there is a problem with the gist of the action? It was never raised in any way or any manner during trial. They did not raise it at the pretrial conference. All Judge Conte, excuse me, the trial court asked was, folks, you need to tell me what claims you're going to bring to the jury. Are you going to bring a fraud claim, or is there a gist of the action issue? We indicated we were going to bring a fraud claim. Is that all she said, or did she also say, it looks to me like it's a contract action? Your Honor, she suggested that there was the motion to dismiss, and that was raised. We then submitted to her the list of claims. Never once after that did pediatrics raise the question of whether the fraud claim ought to go to the jury, whether we adduced sufficient evidence to take us outside of the gist of the action. There was nothing at the charge conference, not a peep, I'm sorry to be colloquial, during the course of the entire trial. When we indicated to Judge Conte in response to her request that among our claims, when we listed them, it would be fraud, there was no motion, nothing. Okay. I've been holding my question while this went on, but I do have one that's a little different. Did your damages expert discuss what damages you suffered from the fraud in the inducement claim? No, Your Honor, our damages expert was... It was on contract, wasn't it? It was on contract. Yeah, so what is the basis for the damages in the fraud claim? Oh, well, as the court found, the trial court found during the pretrial conference, the $500,000 aligns perfectly with what it is the telechem would have received if it had not decided to forego the subcontract. But isn't that essentially a contract issue? I mean, they decide, they made a decision not to accept the subcontractor deal that was offered. And why is that fraud? I still am having trouble distinguishing between the fraud. But if that's, is that what your expert said? I mean, I'm talking about what evidence that you put in on to support a fraud damage claim. Well, the expert talked about, you know, lost value in terms of commercialization. Okay, so that was contract, right? That's contract. Okay, so what, but you have a fraud judgment, right? Yes, Your Honor. Okay, and what supports the damage on the fraud judgment if the fraud judgment is based on the decision to forego a subcontract? The evidence was, again, you have to realize, if we had not, if we had not been promised that there was going to be a long-term business relationship, we would have taken our $500 payday and we would have done only those things required of a subcontractor. That was a decision made on, I guess one could argue that that was a decision made not to enter into a specific contract. I'm still trying to distinguish between the damage, you each got about a million dollars on the contract. The liquidated sum. Subcontract, and they washed each other out. And so what we're talking about is the $500,000, some $1,000 on the fraud. And I looked at the damages, your expert, and I'm not sure, can you point us to where the damage expert said this is as a result of the fraud? Your Honor, I'm saying no, and as we argued at the post-trial, and as Judge Conte concluded, that the evidence was, and there was the $500,000 that was promised. If we would have been a subcontractor, we would have gotten a short payday without the promise of the long-term business. But you decided not to do that. Based upon a false promise. That was a contractual, that was a, well, okay, I don't think. May I interrupt there too? Sure, go ahead. The $500,000 contract is the gross amount you would receive. It's not the loss. The $500,000 subcontract would have required you to perform certain work for which you would have received a profit, assumed. But it was not $500,000 that you were going to get. Well, Your Honor, some of the things that we would have done under the subcontract. Please answer my question. You have a subcontract for $500,000. Yes, Your Honor. And you don't get the contract. What is your loss? It's the $500,000 we would have supported the grant application. No, it's the net you would have had for performing that subcontract. Right? Yes. And there was no evidence about what that net was, was there? No. Okay. I see my time is up. I'm assuming if the Court had any question about punitive damages, I don't want to disobey the clock. Well, we disobey the clock all the time. But I didn't have any question on punitive damages. Did you? I think the briefing for me is more than adequate on that. And again, much of our argument when it comes to the merits of the gist of the action doctrine, to me and to the trial court, confirmed that this is a sufficiency challenge that ought to have been raised pursuant to Rule 50A in the first instance. But it's the trial court's judgment. You can't keep telling us, well, the trial court did this. That's what's on appeal. Your Honor, I understand. And I'm arguing the waiver point, that this points out that this isn't a sufficiency challenge. Okay. Thank you. Ms. Schneider, rebuttal. The merger doctrine states that when an appellant notices an appeal from a judgment, all questions of law presented below come up with that judgment. The denial of the motion to dismiss is one of those questions of law. I would like to point out that Telechem did not assert in the district court a failure to move under Rule 50A, and that this court has held that that lack of specification of Rule 50A below precludes Telechem from raising it on appeal. Well, didn't they actually say, though, that when they made their argument, as they did to the district court, that this goes to the sufficiency of the evidence and the pediatrics didn't raise it in a directed verdict context, that that is a statement, in fact, that you had waived? I mean, they made the same waiver argument to the district court that they're making in front of us. Are you telling us that? But they didn't use the words Rule 50A. And you think that without uttering those words, they've abandoned their position? This court has so held. That you have to say, you have to utter the words Rule 50A. They have to specify Rule 50A. If you don't, if you stand up and you say, hey, there's a waiver, it's under some rule, here's the argument, that if you don't say 50A, it's gone? The court has so held in, I will tell you in one second. Also, there was no waiver claim made on duplicative recovery. There has not been an argument made to this court that the duplicative recovery argument that pediatrics is pursuing was waived below. You were going to tell us the case. Oh, yes. I'm sorry, Your Honor. I moved on. I will absolutely tell you the case. I apologize. It is... Well, you're after that. Why don't I... Cheney. Cheney v. Street. What? Cheney v. Street. Cheney. I didn't write that. Put your citation on that, please. I'm sorry? Do you have a case cite? Yes, absolutely. It's cited in our brief, in the reply brief, but the citation is 523F3200. Wait, is this the right case? Hold on one second. Just make sure I'm coming up with the right case. Cheney, C-H-E-N-E-Y? C-H-A-I-N-E-Y. It's not in your blue brief. It's in the reply brief, which is the brief that dealt with waiver. Okay. It's discussed on page 8 of our reply brief. With respect to the question of the representations, I'd like to point out that there is clear that those representations are the alleged misrepresentation is incorporated in each contract. I believe that the Court asked questions about this. If you look at page 137A, the oral contract itself states, well, there are various places. First of all, there's a statement in respect to, I'm going to do it in order of how the letters came out, the letters that documented the so-called oral contract. Pediatrics' letter on page 1153A. The proposals will lead to long – I'm sorry? What date is that letter? The letter is dated February 7, 2000. The proposals will lead to long-term commitments and mutual benefits, part of this oral contract. Telechem's responsive letter of March 3, 2000. Array.com will benefit from the residual commercial uses and partnership. The written contract – I'm sorry, let me give you the site for that last one. I apologize. It is page 1253A. These are all in our brief also. Preincorporation agreement, the written contract, page 1475A. Pediatrics is to apply efforts to the commercialization of the new technology. Excuse me, what are these supposed to be showing us? Because they show you that the misrepresentation that pediatrics told Telechem that you will benefit from the technology. That is in the contract, which is why the fraud claim is not independent. It's why it's wrapped up in the contract, and it is why they can't have a separate recovery. And, in fact, the very breach of contract claim – I'm sorry, Your Honor. I was going to say, let me take you back to the waiver issue, which so much of this argument has wound around. For obvious reasons. It's obviously a serious problem. You rely in your reply brief on – I presume it's pronounced Chemitol, GMBH versus ZR Energy, a Seventh Circuit case, for the proposition that if it's a question of law, the court can reach it, whether it's raised in a Rule 50 motion or not. That case, the language of that case says specifically that, quote, if the legal question can be separated from the factual one, then we see no bar to reviewing the legal question, notwithstanding the party's failure to raise it in a motion for judgment as a matter of law, unquote. That's from page 720 of that case. I want you to explain, if you can, how the legal question here, which I think I even heard your opponent acknowledge, is ultimately a legal question. How can that be separated from the factual question about the evidence that was presented at trial? How can we look at the one without considering the factual issues, which you discuss at length in your briefing? Perhaps the next citation I was going to give you will help on that. When telechem sued itself for breach of the written contract, its allegations stated that Neogen, which was the earlier formulation of pediatrics, has breached the contract, which required that it take all steps necessary to incorporate the new entity, and by denying commercial benefit to telechem. So that was its claim of breach. Even as you say this to me, though, Ms. Schneider, what you're saying is, here, look at this evidence. You're reading from the record. No, I'm reading the pleading. My understanding, I apologize. I thought you were directing us to points in the record where you were saying, hey, see this? Listen to this. It's in the contract, which is evidence, right? Yes. I was showing you that before, but my last point was going to be that when telechem sued for breach of contract, its suit incorporated the denial of commercial benefit as a breach of contract claim. That's what I was trying to get to. It's paragraph 23 of the counterclaim, and it is on page 140A. And you're saying what? They sued for a breach of contract? They sued for breach of contract for failure to commercialize. Which incorporated what you're saying. Which incorporated what you're saying, their fraud claim. Exactly, Your Honor. And that's why I think it can be a question of law. And they also brought a fraud in the inducement claim. I mean, they pled both those things, right? They did. All right. So I'm not sure. Maybe I'm being obtuse, and I don't mean to be, and we're past here on the clock. No, go ahead. If you have a they pled both things, they recovered on both things. I understand your duplicative recovery argument. I'm not asking about that. I'm just asking about waiver. How do we separate the factual questions, which have been discussed throughout your brief and here oral argument, from the ultimate question of whether this action is ultimately one that sounds in tort or in contract? I would think that the allegations in the counterclaim are binding on telechem. If it's suing for breach of a failure to commercialize as a breach, I think that that's kind of definitive. Okay. Okay. That's your answer. Thanks. Thank you. Thank you, Your Honor. Thank you both. We'll take this interesting case under advisement.